# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CHERYL L. HELBER,**

        Plaintiff,

  v.                                **Civil Action 2:18-cv-502**
                                       **Judge James L. Graham**
                                       **Magistrate Judge Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Cheryl L. Helber, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her Disability Insurance Benefits. For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

## I. BACKGROUND

### A. Prior Proceedings

Plaintiff applied for Disability Insurance Benefits ("DIB") on November 24, 2014, alleging disability due to a number of physical and mental impairments. (Doc. 6, Tr. 196). Plaintiff alleged an onset date of August 26, 2014. (*Id*.).

After initial administrative denials of Plaintiff's claims, Administrative Law Judge Dianne S. Mantel ("the ALJ") heard the case on May 16, 2017. (*Id*., Tr. 8–47). On July 27, 2017, the ALJ issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security

Act. (*Id.*, Tr. 60–75). Plaintiff requested a review of the Hearing, and the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (*Id.*, Tr. 1–6).

Plaintiff filed this case on May 21, 2018, and the Commissioner filed the administrative record on September 24, 2018. (Doc. 6). Plaintiff filed a Statement of Specific Errors on November 8, 2018 (Doc. 7), the Commissioner responded (Doc. 10), and Plaintiff filed a reply (Doc. 11). Thus, this matter is now ripe for review.

**B. Relevant Hearing Testimony**

The ALJ usefully summarized Plaintiff's testimony as follows:

> [T]he claimant testified that she has a valid driver's license, and has had health insurance throughout the period at issue. She is married, and lives with her husband and her mother in a two-story home, although she does not usually go upstairs. Using stairs causes pain in her hips and knees, she testified. Her mother has dementia, and the claimant has to keep her from using the stove or microwave. She attested that she recently had neck surgery, and began having problems with her neck "off and on" for about ten years, although it had become worse in the last year. She received injections for her neck pain, although they did not help, and also attended physical therapy, which was not beneficial. She has seen an improvement in her left arm pain since surgery. The claimant attested that she underwent carpal tunnel release surgery on the left, [sic] and will still occasionally have some short-term tingling and numbness in the palm and arm. She still has some weakness and tremors in the left hand, although her symptoms have improved since surgery. The claimant testified that she does take medications for her mental symptoms, which help, and has not attended counseling.
>
> As to her fibromyalgia, the claimant testified that all of the medications she has tried provide only short-term relief of symptoms, and she has most recently been using low-dose Fentanyl and a muscle relaxer. The claimant attested that she will spend about twice per week on the toilet due to cramping. She alleged that she tires very easily when performing household tasks such as loading the dishwasher, and will then be "down" anywhere from two hours to two days. She does not sweep or vacuum due to pain in her shoulders. She is able to do laundry, and cooks about five times per month, usually preparing meals in the microwave the rest of the time. The claimant alleged that on a typical day she will rise about eight in the morning, lie down after a couple hours until about 4:30, and then spend time with her husband in the living room, either lying on the couch or sitting and watching the news. She spends most of her time lying down and watching television. She also reads books on her tablet, and enjoys horror novels, such as Stephen King books. On a "good" day, she will go out to eat or visit a friend. The claimant testified that she will visit

with her son and grandson about twice a week. She attested that she can stand for five or ten minutes, walk for about 20 minutes, sit for 15 minutes, and lift and carry about 10 to 15 pounds. She uses a cane for balance, complaining of several falls at home.

(Tr. 65–66).

### C. Relevant Medical Background

Plaintiff's assignments of error concern her mental impairments and her use of a cane as an assistive device. The Undersigned summarizes the relevant medical background accordingly.

Plaintiff has a long history of treatment for fibromyalgia. (Tr. 295). Over the past 25 years, her fibromyalgia has worsened, resulting in "diffuse pain with activity" that limits her activities of daily living and causes her to sleep poorly. (*Id.*). In September 2014, Robert J. Mazo, DO, noted that Plaintiff "[r]ecently . . . has been having to use a cane while walking because of diffuse pain and spasms in her lower extremities where her legs give out." (Tr. 288). On September 15, 2014, she reported that "[s]he feels she is much better over the past few days and is walking better but still uses a cane." (*Id.*). Dr. Mazo observed that Plaintiff "walks with a cane but without a wide-based gait and with good left arm swing." (Tr. 289).

On January 5, 2015, Steven J. Meyer, Ph.D, completed a psychological evaluation of Plaintiff at the request of the Ohio Division of Disability Determination. (Tr. 304–11). Dr. Meyer noted that Plaintiff was medicated with Celexa, Wellbutrin, Enalapril, Pramipexole, and Tizanidine. (Tr. 305). Plaintiff reported that she had never been involved in outpatient counseling and have never been administered psychological testing. (Tr. 306). Dr. Meyer observed that she was taking two antidepressants and that she reported "some" improvement in her symptoms. (*Id.*).

At the evaluation, Plaintiff's mood was dysphoric with mild anxiety. (*Id.*). "She reported experiencing symptoms of depression including a depressed mood for over the last 10 years." (*Id.*). She indicated that she felt "helpless and guilty" and stated that she had no energy. (*Id.*).

3

Plaintiff attributed her depression to her loss of functioning and not working. (*Id.*). Plaintiff did not, however, report any feelings of anxiety. (*Id.*).

Dr. Meyer diagnosed Plaintiff with Adjustment Disorder with Mixed Anxiety and Depressed Mood "based on reported symptoms of depression, decreased sleep, diminished functioning, somatic concerns, low self-esteem, worries, and fears." (Tr. at 307). He concluded that Plaintiff could perform simple to complex routine instructions and tasks. (Tr. 308). Further, he found no evidence of Plaintiff having problems with attention/concentration, persistence, or pace, finding that Plaintiff was able to perform in a work setting without strict production requirements, and with additional assistance available as needed at times of change in routine. (*Id.*). Dr. Meyer observed that Plaintiff had no history of problems getting along with others and found that she could "respond appropriately in a nonpublic/solitary work setting with intermittent/occasional interactions with coworkers and supervisors." (*Id.*). Finally, he concluded that Plaintiff could "withstand the stress and pressures of a low stress work setting with medication compliance, for work with in any physical conditions, and with additional assistance available as needed at times of change in routine." (*Id.*).

On February 17, 2015, and April 14, 2015, state agency psychological consultants evaluated Plaintiff's medical records. (Tr. 96–98, 106–08). They found that Dr. Meyer's opinions were entitled to great weight. (Tr. 98, 108). They opined, however, that Plaintiff's affective disorder was a non-severe impairment and that Plaintiff had no limitation in her activities of daily living and maintaining social functioning. (Tr. 96–97, 107). They also found that Plaintiff had mild limitations in maintaining concentration, persistence, or pace, but had not experienced repeated episodes of decompensation. (Tr. 97, 107). The state agency psychological consultants

both concluded that the evidence did not establish the presence of paragraph C criteria. (Tr. 97, 107).

At her August 4, 2015 appointment with Matthew Mundwiler, MD, Plaintiff reported that she had fallen twice since her last appointment. (Tr. 433). Plaintiff continued to use a cane while walking. (Tr. 435). Hospital records from September 23, 2015 note a "risk for falls" in Plaintiff's past medical history problem list. (Tr. 487). November 15, 2016 treatment notes from Bradford Mullin, MD, at Mount Carmel indicate that Plaintiff continued to use a cane to walk. (Tr. 420).

### D. The ALJ's Decision

The ALJ found that Plaintiff remained insured for disability insurance benefits through June 30, 2020 and that she had not engaged in substantial gainful activity since her alleged onset date of August 26, 2014. (Tr. 62). The ALJ determined that Plaintiff suffered from the following severe impairments: fibromyalgia; obesity; cervical degenerative disc disease, status-post February 2017 C5-C7 discectomy and fusion; and left carpal tunnel syndrome, status post release in October of 2016. (*Id*.). Additionally, the ALJ determined that Plaintiff suffered from non-severe impairments, including diabetes mellitus, obstructive sleep apnea, hypertension, urinary tract infection, postoperative left neck hematoma, ventral hernia, gastritis, adjustment disorder with mixed anxiety and depressed mood, and a history of small bowel resection due to carcinoid with node metastasis. (Tr. 63).

Upon consideration of the record, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC") to:

> perform light work … in that the claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit for six hours out of an eight-hour workday and can stand and/or walk for six hours out of an eight-hour workday. She must have the ability to alternate between sitting and standing, at her option, every 30 minutes for one to two minutes, so long as she is not off task or has to leave the vicinity of the workstation. The claimant can never climb ladders, ropes,

5

or scaffolds, and can frequently climb ramps and stairs, balance, crouch, kneel, stoop, and crawl. She cannot work around unprotected heights or unprotected moving mechanical machinery. From March 1, 2016, the claimant has the residual functional capacity to perform light work … in that the claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit for six hours out of an eight-hour workday and can stand and /or walk for six hours out of an eight-hour workday. She must have the ability to alternate between sitting and standing, at her option, every 30 minutes for one to two minutes, so long as she is not off task or has to leave the vicinity of the workstation. The claimant can never climb ladders, ropes, or scaffolds, or crawl, and can occasionally climb ramps and stairs, balance, crouch, kneel, and stoop. She cannot reach overhead with her bilateral upper extremities. She cannot move her neck to the extreme range of motion, but can move her torso to accommodate this action. She can frequently handle with the non-dominant left upper extremity. She cannot work around unprotected heights or unprotected moving mechanical machinery.

(Tr. 64–65). Based on this RFC, the ALJ concluded that Plaintiff was capable of working as an inspector/packer, sorter, or assembler. (Tr. 69).

**II.     STANDARD OF REVIEW**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff asserts two assignments of error: (1) The ALJ failed to properly identify Plaintiff's mental health impairments as severe; and (2) the ALJ failed to properly determine whether Plaintiff's assistive device was medically necessary. (Doc. 7 at 5–11).

### A. Assessment of Plaintiff's Mental Impairments

Plaintiff takes issues with the ALJ's assessment of her mental impairments. (*Id.* at 5–9). This argument turns on the ALJ's analysis of the opinion of Dr. Meyer, the only medical source to examine Plaintiff.

Dr. Meyer was a nontreating, examining source. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) ("A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' [her]."). The Social Security Administration "[g]enerally [ ] give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" her. 20 C.F.R. § 404.1527(c)(1). Although the "good reasons" rule applies only to treating physicians, *Smith*, 482 F.3d at 876, an ALJ "must always consider and address medical source opinions[, and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted," SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996).

Here, Dr. Meyer opined that Plaintiff's mental impairments restricted her ability to work and recommended a number of limitations: no strict production requirements; additional assistance available as needed at times of change in routine; a nonpublic/solitary work setting; intermittent/occasional interactions with coworkers and supervisors; and a low stress work setting. (Tr. 308). The state agency psychological consultants concluded that Plaintiff was mildly limited in maintaining concentration, persistence, or pace, but otherwise had no mental limitations as a

result of her affective disorders. (Tr. 97, 107). Nonetheless, they both found that Dr. Meyer's opinion was entitled to "great weight." (Tr. 98, 108).

The ALJ considered Dr. Meyer's opinion and concluded that it was entitled to little weight because it was "heavily based upon the claimant's subjective reports of symptoms, and is inconsistent with Mr. Meyer's findings." (Tr. 63–64). Moreover, she explained, the GAF assessment completed by Dr. Meyer supported a finding that Plaintiff had, at most, mild limitations as a result of her mental impairments. (Tr. 64). This analysis generally complied with the relevant regulations. *See* SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996) (providing that an ALJ "must always consider and address medical source opinions[, and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

But the ALJ continued and assigned the opinions of the state agency psychological consultants great weight because they were "consistent with the record a whole." (Tr. 64). Plaintiff argues that the ALJ's decision is internally inconsistent: The ALJ discredited Dr. Meyer's opinion despite assigning great weight to the opinions of the state agency psychological consultants, both of whom concluded that Dr. Meyer's opinion was entitled to great weight. (Doc. 7 at 7).

Plaintiff appears to have a point. On the face of the decision, it is unclear whether the ALJ intended to credit only the state agency psychological consultants' opinions that Plaintiff's mental impairments were not severe, or whether the ALJ intended to credit their opinions—including their finding that Dr. Meyer's opinion was entitled to great weight—as a whole. (*See* Tr. 64). If the ALJ credited the state agency psychological consultants' opinions as a whole, there is a logical disconnect between that finding and the decision to assign Dr. Meyer's opinion little weight that

8

must be explained.  *Cf. Waye v. Comm'r of Soc. Sec.*, No. 1:18-CV-201, 2019 WL 364258, at *5 (S.D. Ohio Jan. 30, 2019) ("As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion." (citing *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir. 2004); *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011))).  Because Dr. Meyer was the only medical source to examine Plaintiff in relation to her mental impairments, and because his opinion was not adopted as part of the RFC, remand is appropriate to permit the ALJ to clarify her decision on this issue.

On remand, the ALJ should clarify whether she placed great weight on the state agency psychological consultants' entire opinions or only their opinions that Plaintiff's mental impairments were not severe.  To the extent she credited their entire opinions, the ALJ should address their finding that Dr. Meyer's opinion was entitled to great weight.  To the extent she credited only their opinions that Plaintiff's mental impairments were not severe, the ALJ should give reasons why she did not credit the rest of their opinions.

### B. Plaintiff's Use of an Assistive Device

Less persuasive is Plaintiff's argument that the ALJ erred by failing to include her use of a cane as a limitation as part of her RFC.  It is true that "[a]n individual's RFC may be impacted by a requirement to use a hand-held assistive device." *Forester v. Comm'r of Soc. Sec.*, No. 2:16-CV-1156, 2017 WL 4769006, at *3 (S.D. Ohio Oct. 23, 2017) (citing 20 C.F.R. Part 404, Subpt. P. App. 1, § 1.00(J)(4)).  But "[s]imply because Plaintiff may have been using a cane at various times, does not mean the ALJ was required to include it in Plaintiff's RFC." *Forester*, 2017 WL 4769006, at *4 (citation and internal quotation marks omitted).  Here, the ALJ noted that Plaintiff used a cane to ambulate at times but did not include it in Plaintiff's RFC because: it "was not prescribed," Plaintiff "was able to tandem walk with only mild difficulty," and she "could stand

9

on heels and toes without assistance." (Tr. 68). In other words, the ALJ concluded that Plaintiff's use of a cane was not medically necessary.

Substantial evidence supports this conclusion. The record does not appear to contain any evidence that any medical source recommended or prescribed that Plaintiff use a cane. *Cf.* SSR 96–9p, 1996 WL 374185, at *7 (1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing"). Nor does the record appear to contain any evidence "describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)," *id.* The ALJ therefore did not err by not including Plaintiff's use of a cane as a limitation as part of her RFC.

## IV.     CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

## V.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.

Date: March 11, 2019                      /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE